TWO HUNDRED AND SIXTY-NINE AND ONE-HALF BALES OF COTTON (UNITED STATES v.). See Case No. 16,-583.

## Case No. 14,297.

### TWO HUNDRED AND TEN BARRELS OF OIL

[1 Spr. 91.][1]

District Court, D. Massachusetts. Oct., 1844.

#### SALVAGE—DERELICT—MOIETY—AMOUNT.

1. The rule of giving a moiety as salvage, in cases of derelict, is so flexible, and has been so often departed from, that it is nearly abrogated.

2. The amount of salvage compensation, is to be such as justice and policy require; and various considerations, as stated, should influence the award of salvage. More than five-sixths are given.

In admiralty.

T. G. Coffin, for libellants.
J. H. W. Page, for claimants.

SPRAGUE, District Judge. This was a libel in rem for salvage. It appears that the ship London Packet sailed from New Bedford on the 24th of November, 1841, fitted for a voyage of three and a-half years, in the sperm whale fishery. On the 18th August, 1842, having taken one thousand barrels of sperm oil, she discovered the wreck of the whale ship Benezet, on a reef, about forty miles from the Feejee Islands, a place dangerous to navigation from reefs, calms and currents. The captain of the London Packet, hoping to save the crew, went in his boat to the wreck, and at some hazard, succeeded in getting on board. None of the crew were found. He took some coils of warp from the wreck, and returned to his own ship. On the two following days he boarded the wreck again, and took some articles of her apparel. He cut a hole through the deck, in order to take oil from the hold, but without success, and cut away the masts, in order to prevent her going to pieces. On the night of the 20th, the wreck went to pieces, and the next day the crew of the London Packet picked up about two hundred and ten barrels of oil, and some sails and rigging a-drift, from thirty rods to a mile from the reef. The following night, the ship, in a calm, was carried by the swell and current within twenty or thirty rods of the reef, and was relieved from her perilous situation by the springing up of a breeze. The salvors described the weather, after the discovery of the wreck, and before picking up the oil, as rough and squally.

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

·Having been carried by the current some distance from the wreck, the London Packet beat back in two or three days, and took some other articles from the remnants of the wreck. On the 27th, they picked up, at sea, a cask of oil containing six barrels. On returning to the reef, about the 3d of September, no vestige of the Benezet, or of her cargo, remained.

The captain and crew of the Benezet, reached the Bay of Islands, New Zealand, about a thousand miles distant from the wreck, in a whale ship called the Hoogly; at what time, did not distinctly appear, although there was evidence tending to show that it was in the month of August. The master, after advertising ten days, sold the Benezet and cargo at auction, for the sum of fifty-five shillings sterling. The London Packet arrived at the Bay of Islands about the 18th of October following. The purchaser was then preparing to send a small schooner to the wreck, but upon information then received, abandoned the enterprise.

The London Packet arrived at New Bedford, on the 27th of June, 1844, with two thousand one hundred and fifty-five barrels of sperm oil, including that which had been picked up. She could have carried about two thousand two hundred barrels. She was insured for the voyage, at six per cent., for three years, and pro rata, for a longer time, and, at the time of the salvage, was, with her cargo worth $40,000.

It has very often been laid down that, in case of derelict, the salvor is to have a moiety. This rule is so flexible, and has been so frequently departed from, especially of late, that it may be deemed nearly abrogated. It never rested upon any sound reason, and seems to have had its origin in unsettled notions as to the right of the original owner. Doubts were felt whether such property belonged to the former proprietor, or to the finder, and resort was had to an arbitrary rule of equal division between them, as a practical, though not rational solution of the difficulty. It is quite clear, that upon just principles, the proprietorship is not lost by the forcible separation of the owner from his goods, by misfortune, even although abandoned, without hope of recovery. In such case, the only question is, what compensation should be made to the finder, for their rescue and restoration. The compensation, as in other cases of salvage, is to be such as justice and policy dictate. It should not be merely a quantum meruit, but as much more as will be sufficient to ensure prompt, energetic, courageous, and persevering efforts to save property, in the various circumstances in which it may be in peril, bearing in mind that, in general, there is no choice of means, but the service must be rendered instantly by the persons who chance to be at hand, and that the inducements to be offered, must be such as to operate effectually, and at once, upon every class of competent persons,

even the reluctant, the hesitating and the timid; so that the indolent may be stimulated, and the calculations of the cautious result in bold, earnest, and effective exertions. In some cases, too, the salvage compensation should be such as to offer inducements to previous preparation and readiness, in anticipation of the actual emergency; as, for example, on a coast where disasters not unfrequently occur, but the business of ·the place would not, of itself, supply the appliances for instant relief. In the present case, we are to consider, 1st. The desperate condition of the property,—wrecked upon a desolate reef, a thousand miles from any country whence assistance could be rendered, abandoned by the master and crew,—the actual breaking up of the vessel and cargo, and the dispersion of their fragments, with the cer-·tainty of a total loss, but for the timely interposition of the London Packet. The opinion formed at the time, is shown by the fact, that the ship which took up the master and crew, did not choose to go to the wreck, or attempt to save anything, and the whole was sold at auction for fifty-five shillings. 2d. The meritorious conduct of the salvors, in boarding the vessel for the humane purpose of saving life; the personal hazard incurred by the master and crew; the risk to their ship and cargo—and to this, is to be added the forfeiture of her insurance; the situation of the London Packet; the nature of her voyage; the probability of obtaining a cargo; the great distance which the property was conveyed; and the skill and care required in preserving it.

On the other hand, whaling ships do not, upon an average, get more than two-thirds of a cargo, and not one in ten, comes home full. This ship returned ·in forty-three months, with two thousand one hundred and fifty-five barrels. including the oil saved, and could have carried only forty-five barrels more.

The evidence shows, that with average success in whaling, the London Packet would have taken fifty-five barrels a month. To have procured this oil from whales would, therefore, have required nearly four months. Many witnesses have been introduced on both sides, without objection, to give their estimate of the value of the oil to the salvors, in the condition it was when found. These opinions are various and conflicting, and I do not attach much importance to them. The value of the property saved, is always a material element in awarding salvage. In the present instance, the amount, at the market price in New Bedford, is $6740; of this I shall give $5740 to the libellants, which will leave $1000 to the claimants. Decree accordingly.

NOTE. "I am of opinion, that there is no such rule (as to award a moiety to the finder in case of derelict): it may have existed and become obsolete." Sir Wm. Scott, in The Aquila, 1 C. Rob. Adm. 45. "There is no valid reason to

be assigned for fixing a reward for salving derelict property at a moiety, or any given proportion. The true principle, is adequate reward, according to the circumstances of the case. The reward in derelict cases should be governed by the same principles as in salvage cases.—namely, danger to property, value, risk of life, skill, labor, and the duration of the service." Dr. Lushington, in The Florence, 20 Eng. Law & Eq. 622, cited with approval in Post v. Jones, 19 How. [60 U. S.] 161. But see Abb. Shipp. 555; Story's note; The Galaxy [Case No. 5,-186]; The John Wurts [Id. 7.434]; The Britannia, 3 Hagg. Adm. 153. As cases in which more than a moiety has been awarded, see The Jonge Bastiaan, 5 C. Rob. Adm. 322; The Jubilee, 3 Hagg. Adm. 43. note; The Waterloo [Case No. 17,257], in which the salvage was two-thirds; and The Rising Sun [Id. 11,858], in which three-fifths was awarded. The William Hamilton, 3 Hagg. Adm. 168; Derelict, unknown., Id., note,—in which, the amounts being small, and unclaimed, the whole was decreed to the finders.